Per Curiam.
The first objection taken by the learned counsel for defendants is, that the order did not operate as if there were a sum to become due by defendants’ testator, but only upon Haas’ rights in respect of the last installment such as it was under the contract. The principle implied seems to be correct. The thing assigned equitably was Haas’ right, to the extent of $2,820, under that provision of the contract that referred to the last installment. If there were money due, the right of Haas or his equitable assignees, the plaintiffs, would be to recover the money. If Haas’ right were confined to an action for damages, for the failure to loan money, the plaintiffs would be entitled to such damages only. Counsel for defendants agrees that defendants’ testator agreed to lend the money and not to pay it. The words of the contract refer only to a loan. They are : ‘ ‘ the party of the first part hereby agrees to advance the party of the second part $6,000, on each house, as a loan,” etc. If this were to be taken by itself, there would be admissible only those considerations that are pertinent to an agreement to lend. In fact, however, it is to be considered in connection with other provisions of the contract. The decisive provision, although others have significance on this point, is that for the money to be loaned as provided, and upon other conditions being performed, the decedent was to take a mortgage upon the land, which at that time was to become the property of Haas. Manifestly, if this mortgage were taken before the *463 money agreed to be loaned was actually advanced, the mortgagee would become indebted in the amount not advanced. It was the fact in this case, that such mortgage was taken or an equivalent for it given. This is an inference from the facts as to the performance of the contract. The rights under the agreement to advance, were not such only as grew out of the actual existence of facts at the time the agreement was made, but out of such further facts as afterwards occurred, and indeed as were contemplated by the parties as about to occur. On this point it must be said that the plaintiffs, as assignees of Haas, were entitled to recover to the extent of the order as for money agreed to be paid.
The next position taken was, that by the terms of the contract it was provided that any installment to grow due under the same was not to be assigned. The words were, “This contract not to be assigned, or any part thereof, or any installments to grow due under the same.” These words do not, on their face, attempt to prevent there coming into existence those things and rights, which when they exist, show there is something to which the law attributes the quality of assignability. There would be performance and a corresponding obligation to pay, in which Haas or his assignee would have aright of property. The words must be construed to mean, if they can be enforced, that Haas agrees not to assign, etc., and if he do, the appropriate consequence would be a claim for damages for a breach of the agreement. They would not make the assignment void.
The next position is, that the installment in question had not become payable by the defendants’ testator, because at the time it would otherwise have become payable there was a lien upon the land. The contract provided that the loan was to be made in installments, “provided all hens are first removed.” The lien referred to remained upon the land at the time the plaintiffs demanded payment of their order. After that, and before the action was begun, three other liens were filed. All these hens were filed *464 under the statute in reference to mechanics’ liens. The contract also provided that should Haas “fail to keep the houses free from liens under the mechanics’ law, or allow any hens to remain on record after either of said installments become due, then the said party of the second part at the option of the said party of the first part, hereby forfeits all claim under this contract for a conveyance of said lots, or either of them, or for any work or materials placed thereon.’’ Both of the provisions referred to, as they were for the benefit of the testator, could be waived by him. He did waive them. When one of the plaintiffs presented the order as due, the testator paid him a certain sum of $1,000, not paying the remainder pi the amount on the ground that he had paid to Haas the remainder. It appeared that as a fact, besides these two sums, the testator had reserved the amount of the lien and interest. By doing this, he waived the removal of the lien as a condition precedent of payment. He took upon himself the office of removing the lien with the money he reserved. If the plaintiffs rely upon this, they of course, should yield to the deduction from their claim of the amount of the lien, if there were a valid hen. The defendant, however, on the trial, made no claim for a deduction, using the evidence as to the Hen only for the purpose of their position that the installment was not payable provided there was a Hen. As to the subsequent Hens, the contract did not declare that the obligation to pay should depend upon their removal, but that the testator might, at his option, consider that Haas forfeited his claim to a conveyance or the reverse. That option was exercised by giving the conveyance.
The defendant’s counsel asked, and the court refused to charge the jury, ‘ ‘ That if they beHeve that the plaintiffs and Mr. Kendall both treated the order as requiring an acceptance, and as creating no Hability without an acceptance, and no claim having been made by plaintiffs for payment of the whole amount, or that Kendall should not pay Haas until the order was paid, the plaintiffs cannot *465 recover.” There was no testimony that Mr. Kendall, the testator, did not himself know the character of the order and the rights of the plaintiffs under it, after they had given him notice of its existence. Upon that notice to him he became a trustee, equitably,- for plaintiffs, with definite obligations to them. The jury found against one version of an interview with the testator that referred in a certain way to the subject intended by the request. The other version did not comprise any testimony, either that Mr. Kendall did know what the character of the order was, or that the plaintiffs ever told him what their belief as to his legal obligation under the order was. When he made part payment to the plaintiffs, his excuse for not. paying the remainder was that Haas had told him that the plaintiffs had agreed to take Haas’ note, for the sum Haas then required, and he had therefore paid the sum to Haas. The plaintiffs had not so agreed. It is true that the plaintiffs believed that the order and notice of it to-Mr. Kendall did not create an obligation to pay of a legal land, and only of a moral kind. In this they were mistaken. The order was an equitable assignment, and mere-notice of it to Mr. Kendall, without acceptance by him, bound him to pay to no other person than the assignee,, and to him on demand (Field v. Mayor, 6 N. Y. 179 ; People v. Comptroller, &c., 77 Ib. 45, and many other cases). The plaintiffs possessed the right described, and whether-they knew or did not know this, their right to an action was the legal consequences of the legal obligation. They never told Mr. Kendall what their belief was, and thereby led him to pay to Haas.
The order was based upon a consideration. That was. partly it being a security for an indebtedness by the maker to them for materials used in the houses afterwards mortgaged to Mr. Kendall, and partly as security for the payment of an indebtedness of a like kind thereafter to-be received.
What has now been said, has referred to all the objections made for the appellant on the argument.
*466 The defendants’ exceptions are overruled, and judgment with costs for plaintiffs is directed to be entered on the verdict.